798 So.2d 42 (2001)
Douglas F. HOFFMAN, Personal Representative of the Estate of Raymond Coutellier, Appellant,
v.
Helene OUELLETTE, Appellee.
No. 4D01-142.
District Court of Appeal of Florida, Fourth District.
October 17, 2001.
*43 Benjamin L. Bedard and Sanjiv G. Patel of Roberts & Reynolds, P.A., West Palm Beach, for appellant.
Louis Thaler of Louis Thaler, P.A., Coral Gables, for appellee.
STREITFELD, JEFFREY E., Associate Judge.
Appellant, Douglas Hoffman, Personal Representative of the Estate of Raymond Coutellier (Coutellier), Defendant below, appeals from a Final Judgment after a jury verdict awarding damages in an automobile accident case. We agree with the trial court's determination that Florida substantive law applies to this dispute between two Quebec citizens who were temporarily residing in Florida, and therefore affirm.
On February 25, 1995, Coutellier and Appellee/ Plaintiff Helene Ouellette (Ouellette) were both residing at the Candlelight Mobile Home Park in Davie, Broward County, Florida. Ouellette and her common law husband of twenty-five years, Roger Latour, were Quebec citizens without a physical residence in Quebec as of November, 1994, because they had suffered a loss of their home by fire. In January, 1995, Ouellette and Latour began living with Latours father in the Candlelight. Ouellette had spent up to five months each year visiting in Florida, beginning in 1989.
Coutellier had owned a home at the Candlelight since 1993. His habit was to spend approximately five months in Florida, and then return to Quebec, where he remained a citizen. He had traveled to Florida in October, 1994, and had intended to return to Quebec in April, 1995.
Early in the evening of February 25, 1995, Coutellier hit the gas pedal instead of the brake while parking his 1981 Honda at the Candlelight. He drove the Honda into a picnic table adjacent to the parking lot. Unfortunately for Ms. Ouellette, she was sitting at the picnic table having dinner. Ouellette and the table were forced into and through a wooden fence approximately 25-30 feet from the initial point of impact. Ouellette was hospitalized twice for leg injuries, a fractured pelvis, and wound infections. After years of medical treatment, she claimed that she was left with permanent injuries and significant scarring.
Coutellier maintained a liability insurance policy with Canadian General Insurance Company that specifically provided coverage for an accident in the United States. Canadian General agents assisted Ouellette in applying for and obtaining no-fault *44 benefits through a system operated by the government of Quebec.
Ouellette and Latour filed this action for damages in the Circuit Court of the Seventeenth Circuit in October, 1997. Counsel for Coutellier filed an Answer and Affirmative Defenses that denied liability, and asserted defenses under Florida law of comparative negligence, tort threshold, collateral source setoff, and negligence of third parties. Liability remained contested for a period of twenty months. Coutellier moved to amend his answer to admit liability only after Ouellette moved for summary judgment on the issue. On the morning of trial, Latours consortium claim was dismissed because a common law marriage is not recognized under Florida law.
The jury returned a verdict finding a permanent injury, and awarded $33,854 in medical bills and $130,000 for pain and suffering. Post trial, the verdict was reduced by the medical bills and costs were taxed, resulting in a Final Judgment for $133,898.42.
Coutellier asserted below that Florida law does not apply in this case, and that controlling Quebec law bars this action. The trial court denied Coutellier's Motions for Summary Judgment, for a Directed Verdict, for Judgment Notwithstanding the Verdict, and for Rehearing. The denial of these motions frames the issues on appeal.
The first step in the choice of law analysis is to determine the nature of the legal issue involved. Beattey v. College Centre, 613 So.2d 52 (Fla. 4th DCA 1992). The issues framed by the pleadings were based in tort law. Aetna Cas. & Sur. Co. v. Huntington Nat'l Bank, 587 So.2d 483 (Fla. 4th DCA 1991). Negligence and comparative negligence remained in dispute for twenty months. Coutellier continued to rely upon Florida law even after admitting liability when he sought and obtained a dismissal of Latours derivative claim.
The second step in the analysis is to determine the forum's choice of law rule. Beattey. Florida has adopted the significant relationship test as stated in Restatement (Second) of Conflict of Laws § 145. Bishop v. Fla. Specialty Paint Co., 389 So.2d 999 (Fla.1980).
The final step in the analysis is to determine, as between the competing jurisdictions, which has the most significant interest as to the particular issue in dispute. Aetna Cas. The factors to consider under the Restatement and Bishop are:
1) The place where the injury occurred. This is Florida. Coutellier has suggested that little weight should be given to this factor, because the location of the accident is merely fortuitous. Given the residence of the parties, their ties to Florida, and the circumstances of this accident, that argument is rejected. Murphy v. Thornton, 746 So.2d 575 (Fla. 1st DCA 1999).
2) The place where the conduct causing the injury occurred. This is also Florida.
3) The domicile, residence, and nationality of the parties. The resolution of this factor is inconclusive. While both parties were Quebec citizens and maintained their primary residences in Quebec, they also maintained residences in Florida. Coutellier owned the home in which he was residing. While this factor favors Quebec, the weight to be given this factor is insubstantial.
4) The place where the relationship, if any, between the parties is centered. The resolution of this factor is also inconclusive. While Coutellier and Ouellette did not truly have a relationship, they were both neighbors in the same mobile home park. Immediately prior to the accident, Coutellier asked Ouellette for permission *45 to park his Honda in front of the mobile home where Ouellette was living. While the weight to be given this factor is not significant, it favors Florida.
The Restatement (Second) of Conflicts of Laws § 145, includes consideration of the principles enunciated in Section 6. Those principles further support the application of Florida law to this dispute:
a) The needs of the interstate and international systems. There is no conflict between Florida and Quebec. Both have no-fault systems in place designed to compensate victims. Coutellier has failed to demonstrate how allowing access to the Florida courts would have an adverse affect on the Quebec system. To the contrary, Quebec law explicitly permits access to the courts of the United States. Its regulatory scheme includes the express requirement that policies of insurance include a provision for coverage for accidents that occur in the United States.
The Supreme Court of Vermont has recently reached the same conclusion in applying Vermont law to an action between two Quebec citizens involved in an automobile accident. Martineau v. Guertin, 170 Vt. 415, 751 A.2d 776 (2000).
b) The relevant policies of the forum. Florida has a substantial interest with regard to compensating persons injured by automobiles within its borders. Florida courts shall be open to every person for redress of any injury. Art. I, § 21, Fla. Const. Florida is one of the few jurisdictions that upholds the dangerous instrumentality doctrine, requiring a higher standard of care not required in most other states. Kraemer v. Gen. Motors Acceptance Corp., 572 So.2d 1363 (Fla. 1990).
Ouellette received extensive treatment in two local, public hospitals. They are protected by special law with a lien against the proceeds of settlements or judgments. The Florida Secretary of State is appointed as the statutory agent for service of process for any nonresident who drives a motor vehicle across its borders.
c) The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue. As stated above, Quebecs regulatory scheme expressly recognizes the right of its citizens to seek redress in the United States courts for injuries received as a result of an automobile accident. Section 83.59 of the Quebec Automobile Insurance Act provides:

Accident outside Quebec. A person entitled to compensation under this title by reason of an accident that occurred outside Quebec may benefit by the compensation while retaining his remedy with regard to any compensation in excess thereof under the law of the place where the accident occurred.
Sections 85 and 88 of the same Act require that the owner of any automobile operating in Quebec have a liability policy of insurance providing coverage in the United States, equal to the minimum amount of insurance prescribed by legislation respecting insurance in force in the state where the accident occurs.
Finally, consistent with Quebecs recognition of the right to sue in Florida, Section 83.59 of the Act provides for its right of subrogation with regard to no-fault benefits paid.
d) The protection of justified expectations. It is reasonable to assume that Ouellette would expect that she would have the right to the protection of the laws of Florida if she is injured here. She is deemed to know her rights; i.e., that she may collect her Quebec no-fault benefits and retain the right to sue for damages. It *46 is also reasonable to assume that Coutellier would expect to defend himself in Florida, because he purchased insurance that would cover him for such an event.
e) The basic policies underlying the particular field of law. This analysis is the same as factors b) and c) above.
f) The certainty, predictability and uniformity of result; and,
g) The ease in determination and application of law to be applied.
Both of these factors favor the application of Florida law under the strict lex loci delicti rule in personal injury actions. Bishop; State Farm Mut. Auto. Ins. Co. v. Olsen, 406 So.2d 1109 (Fla.1981).
Section 146 of the Restatement provides:
In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
Given the analysis of the Restatement factors, Quebec does not have a more significant relationship to the occurrence and the parties.
Finally, this may be a case of "false conflict." Aetna Cas. A false conflict exists when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by application of the laws. Tune v. Philip Morris Inc., 766 So.2d 350 (Fla. 2d DCA 2000).
In this case, two persons who for several months each year resided in Florida were involved in an automobile accident in the community where they were residing. The party who caused the accident and resulting serious injuries owned the home in Florida in which he was residing at the time of the accident. Consistent with the policies of Florida and Quebec as expressed in this opinion, the policies of Florida would be furthered by the application of its laws. The policy of Quebec would not be advanced by the application of its laws.
For these reasons, the Final Judgment is affirmed.
GUNTHER and WARNER, JJ., concur.